# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

DEREK DEYOUNG,
a resident of Michigan,

      Plaintiff,                               Case No.: 1:20-cv-51

         v.

PRINTABEL COMPANY LIMITED, a Hong
Kong limited by shares company,

THUY PHAN THIEN HA DONG, an individual
resident of Vietnam, and

DOES 1-10,

      Defendants.

_____

## BRIEF IN SUPPORT OF CONSOLIDATED MOTION FOR LEAVE TO AMEND, ORDER TO SHOW CAUSE AS TO WHY DEFENDANTS PRINTABEL COMPANY LIMITED AND PHAN SHOULD NOT BE HELD IN CONTEMPT, AND FOR ADDITIONAL EXPEDITED DISCOVERY

For his Brief in Support of Consolidated Motion for Leave to Amend, Order to Show Cause as to Why Defendants Printabel Company Limited and Phan Should Not Be Held in Contempt, and for Additional Expedited Discovery in this matter, Plaintiff, Derek DeYoung, by and through his attorneys Revision Legal, PLLC, states as follows:

## I.  INTRODUCTION

Defendants have lied to this Court about their ownership of numerous websites, continue to infringe upon DeYoung's works, and have transferred $327,900 out of their PayPal account after the issuance of the preliminary injunction in this matter. Defendants have thumbed their noses at this Court's orders and have shown a willingness to continue their scams even under the threat of contempt. DeYoung now moves for an order to show cause as to why Defendants

1

should not be held in both civil and criminal contempt. Further, DeYoung seeks leave to add newly identified parties and claims and seeks additional expedited discovery to Defendants' service providers to identify all necessary parties, websites, and financial accounts under Defendants' ownership and control.

## II.   STANDARD OF REVIEW

Pursuant to Rule 15(a)(2), "a party may amend its pleading only with… the court's leave. However, "court[s] should freely give leave when justice so requires." *Id*.; *see also Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). In evaluating the interests of justice, courts look to "'[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, [and] undue prejudice to the opposing party.'" *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (*quoting Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). Mere delay on its own is insufficient to warrant denial. *See Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001). Instead, courts examine the competing interests of the litigants and the likelihood of prejudice to the nonmoving party. *See Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) (*citing Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)).

The movant in a civil contempt proceeding bears the burden of proving by clear and convincing evidence that the respondent "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991). This is a heavy burden of proof which requires more than proof by a preponderance of the evidence. *Consolidation Coal Co. v. Local No. 1784, United Mine Workers of Am.*, 514 F.2d 763, 766 (6th Cir. 1975). The purpose of civil contempt is remedial and is imposed "for the benefit of the complainant."

*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S. Ct. 492, 498 (1911); *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S. Ct. 677, 91 L. Ed. 884 (1947) (stating that the purpose of civil contempt is "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."). "[A] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." *McCrone v. United States*, 307 U.S. 61, 64, 59 S. Ct. 685, 83 L. Ed. 1108, 1931-1 C.V. 277 (1939). And "[t]he award of attorneys' fees and expenses to a successful movant may be appropriate in a civil contempt proceeding." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983).

Criminal contempt is governed by 18 U.S.C. § 401. Under that section, federal courts "shall have power to punish by fines or imprisonment, or both, at its discretion, such contempt of its authority, and not other, as… [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." *Id.* The purpose of criminal contempt is punitive, "to vindicate the authority of the court." *Gompers* at 441. "Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.'" *Id.* (*quoting Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 329, 24 S. Ct. 665, 48 L. Ed. 997 (1904)).

Pursuant to Fed. R. Civ. P. 26(b)(2), courts have broad power over the discovery process to permit early discovery to aid in the identification of unknown defendants and financial accounts. The Advisory Committee Notes to Rule 26 indicate that discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for preliminary injunction." Fed. R. Civ. P. 26(d) 1993 Advisory Committee Notes. In the Sixth Circuit, expedited discovery may be had on a showing of good cause and where the party

seeking discovery demonstrates the need to deviate from the normal timing of discovery. *See Arab Am. Civil Rights League v. Trump*, No. 17-10310, 2017 U.S. Dist. LEXIS 221148, at *6-7 (E.D. Mich. Mar. 31, 2017). Generally, courts consider several factors, such as: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for the request; (4) the burden to comply; and (5) how far in advance of the typical discovery process the request was made. *Id*. at 7.

## III.   FACTS

The facts of this case have been extensively briefed and documented in Plaintiff's Brief in Support of Motion for Temporary Restraining Order, Brief in Support of Motion for Preliminary Injunction, and Reply in Support of Motion for Preliminary Injunction and are incorporated here as if fully restated herein. See PageID.13-20, PageID.256-262, PageID.803-810. On February 14, 2020, this Honorable Court issued a preliminary injunction. PageID.1294-1297. Subsequent to the Court's issuance of this preliminary injunction, Plaintiff executed a settlement agreement with Defendants Truong and BGroup and the parties stipulated to the dismissal of this case as to those defendants. PageID.1436-1438.

Prior to the filing of the stipulation of dismissal with prejudice, Plaintiff received fact production from Defendant BGroup. This fact production contained of four categories of information: (1) a list of ShopBase stores that BGroup has identified as having sold infringing DeYoung works; (2) internet protocol address (IP addresses) logs showing the IP addresses that the owners of the stores identified in [1] used when logging into their stores; (3) a list of staff that were authorized to work on the stores identified in [1]; and (4) IP address logs showing the IP addresses that the staff of the stores identified in [3] used when logging into their stores. See **Exhibits A, B, C, and D**, respectively. In addition to this information, DeYoung has made

additional test buys from sites believed to be owned and controlled by Defendants Printabel and Phan, and he has also received additional production by PayPal, which has identified additional accounts owned and controlled by Defendants.

This evidence makes clear that Defendants Printabel and Phan have lied to this Court about the websites that they own and control, have continued to infringe upon DeYoung's works even after the issuance of the temporary restraining order and preliminary injunction, have undertaken a concerted scheme to hide their identities and connections by registering multiple accounts under false names, and have transferred over $300,000 out of PayPal accounts subsequent to the issuance of the Court's preliminary injunction.

DeYoung now moves and requests that the Court grant him leave to amend his First Amended Complaint to add parties that were recently identified through BGroups' production, issue an order for Defendants Printabel and Phan to show cause as to why they should not be held in civil or criminal contempt, and grant expedited discovery to ensure that DeYoung has identified all websites and financial service providers owned or controlled by Defendants.

## IV.  ARGUMENT

### a.  Defendants Printabel and Phan have lied to the Court about the websites that they own and their connections to websites that have been identified by DeYoung as operating in violation of the Court's Orders.

To aid the Court in understanding the connections between Defendants Printabel and Phan and the newly discovered parties discussed in this brief, some definitions are helpful:

- "IP Address" – An internet protocol address is a number assigned to every computer connected to a computer network that uses the Internet Protocol for communication. Most, if not all, computers connected to the Internet are assigned a unique IP address that is written and displayed in human-readable form, such as

"192.168.0.1." See Wikipedia, IP Address, Feb. 25, 2020,

https://en.wikipedia.org/wiki/IP_address.

- "IPv6 Address" – Due to the number of unique computers now using the Internet Protocol for communication, the number of IP addresses has been depleted. A new version of the Internet Protocol that is both currently in use and undergoing further development, called IPv6, also assigns a unique address to a computer that is displayed in human-readable form. A IPv6 address may appear as "2001:db8:0:1234:0:567:8:1." See Wikipedia, IPv6, Feb. 25, 2020, https://en.wikipedia.org/wiki/IPv6.

- "PayPal Client ID" – PayPal is a payments provider that allows websites to accept credit card and debit card payments. PayPal's service allows third party applications to connect with PayPal to utilize its services through the PayPal application programing interface, or API. The PayPal Client ID is the unique identifier that ties a third-party application to a PayPal account. See PayPal, API Basics, Feb. 25, 2020, at https://developer.paypal.com/docs/api-basics/.

Defendant Printabel states that it only owns sixteen websites that it purchased in 2019 from an individual named "Ha Dang Hung": (1) lushgood.com, (2) kayleeandtepid.com, (3) azcozy.com, (4) hmcozy.com; (5) humpine.com; (6) lannadecor.com; (7) cozynfancy.com; (8) isimpleidea.com; (9) azdecor.com, (10) strantie.com, (11) lushsneaker.com, (12) cozyandhomey.com, (13) kzandshuri.com, (14) aquacozy.com, (15) cozzian.com, and (16) printabel.net. PageID.644. These statements are supported by declaration of Defendant Phan. PageID.680. Production provided by BGroup makes clear that these statements are false and were made to mislead this Court.

Exhibit A is a list of all stores that were hosted by ShopBase and that were identified by ShopBase as selling infringing DeYoung goods. **Exhibit A**, Store Owners. This list includes the unique ShopBase username, the public domain name associated with the store, the owner of the store, the store's email, the support email, and the unique PayPal client ID associated with the store's PayPal account. **Exhibit A**, Store Owners. Exhibit B is a list of the IP addresses from which these store owners logged into their stores. **Exhibit B**, Owner IPs. Exhibit C is a list of the staff associated with the identified stores and authorized to work on them, along with their contact information. **Exhibit C**, Store Staff. And **Exhibit D** is a list of the IP addresses from which store staff logged into their stores. See **Exhibit D**, Staff IPs.

This evidence makes clear that Defendants Printabel and Phan own or control at least thirty-six different stores that have not been disclosed to this Court and that have violated this Court's orders. See **Exhibit E**, List of Connections to Printabel. These stores are registered with ShopBase under a variety of names: Lam Nguyen, Macy Daughtery, AZCozy Hubs, Joslyn Clow, Do Trung, and Santino Bruen ("Newly Discovered Parties"). See **Exhibit E**, List of Connections to Printabel. These stores share a variety of resources and characteristics.

### i.   Lam Nguyen

Stores registered under the name Lam Nguyen share the same support address as Printabel (support@bonzstore.com). See **Exhibit A**, Store Owners; see also **Exhibit E**, List of Connections. They also share the same PayPal Client ID (AQjol4yfXog489qgI8IljN97UOS6jqg8RSTBSo-FyJXub47TAuJJvsUfv_onZ6iPx4K0-PX6BSp5pWTA), which means that payments to Lam Nguyen's store <ggs08.onshopbase.com> go to the same PayPal account as Defendant Printabel's azcozy.com store. See **Exhibit A**, Store Owners; see also **Exhibit E**, List of Connections. Lam Nguyen logged into his store from the

same IP addresses as Defendants Printabel and Phan logged into their stores on twenty-four separate occasions. See **Exhibit B**, Owner IPs; see also **Exhibit E**, List of Connections. Additionally, Mr. Nguyen logged into his store from the same IPv6 addresses as Defendant Printabel and Phan on ten different occasions. See **Exhibit B**, Owner IPs; see also **Exhibit E**, List of Connections. Not only does Mr. Nguyen's store share five employees with Printabel, but Mr. Nguyen and Defendant Phan have both worked on azcozy.com. See **Exhibit C**, Store Staff; see also **Exhibit E**, List of Connections.

### ii.  Macy Daughtery

Stores registered to user Macy Daughtery use the aquacozy.com@gmail.com email address. See **Exhibit A**, Store Owners; see also **Exhibit E**, List of Connections. Ms. Daughtery logged into her stores through the same IP addresses that Printabel and Phan used to log into their stores on four separate occasions. See **Exhibit B**, Owner IPs; see also **Exhibit E**, List of Connections. Like Mr. Nguyen above, Ms. Daughtery shares five employees with Printabel and Phan. See **Exhibit C**, Store Staff; see also **Exhibit E**, List of Connections.

### iii.  Joslyn Clow

User Joslyn Clow logged into her store from the same IP addresses that Printabel and Phan used to log into their stores on seven different occasions and used the same IPv6 address on one occasion. See **Exhibit B**, Owner IPs; see also **Exhibit E**, List of Connections. Ms. Clow also shares a staff member with Printabel. See **Exhibit C**, Store Staff; see also **Exhibit E**, List of Connections.

### iv.  Do Trung

User Do Trung used the same IP addresses as Defendants to log into his stores on seven different occasions and the same IPv6 address on one occasion. See **Exhibit B**, Owner IPs; see also **Exhibit E**, List of Connections.

> ### v.   Santino Bruen

User Santino Bruen logged into his site from the same IP address as Defendants on one occasion, uses the support@strantie.com email address (see PageID.680 wherein Defendants admit owning this website), and uses the same lionbreak.com@gmail.com email address as those accounts registered to user Joslyn Clow. See **Exhibit B**, Owner IPs; see also **Exhibit A**, Store Owners; **Exhibit E**, List of Connections.

> ### b. Defendants, in concert with the Newly Discovered Parties, have violated this Court's orders.

As previously stated, the stores mentioned above were identified by BGroup as having sold counterfeit DeYoung works. These stores continued to sell counterfeit DeYoung works after the issuance of the Court's temporary restraining order. The Court's temporary restraining order was served upon Defendants Printabel and Phan on January 27, 2020. PageID.256. In DeYoung's Motion for Preliminary Injunction, DeYoung identified the following websites as also being under Defendants' ownership and control and having sold works in violation of the Court's TRO:

1. Registered to Lam Nguyen

   a. Cubebui.com (PageID.317, 319)

   b. Lushsneaker.com (PageID.321, 411)

   c. Deplonia.com (PageID.410)

2. Registered to Defendant Phan

   a. Azdecorus.com (PageID.318, 323, 325)

      b.  Strantie.com (PageID.320, 322)

      c.  Kzandshuri.com (PageID.326)

      d.  Printabel.net (PageID.335)

      e.  Azcozy.com (PageID.413)

      f.  Cozzian.com (PageID.414)

      g.  Hmcozy.com (PageID.415)

3.  Registered to Do Trung

      a.  Richleen.com (PageID.1103)

4.  Registered to Macy Daughtery

      a.  Scansimo.com (PageID.1104)

      b.  Sporcpea.com (PageID.1105)

      c.  Stipede.com (PageID.1106)

      d.  Sublacti.com (PageID.1107)

      e.  Tonewavi.com (PageID.1108)

      f.  Wysdman.com (PageID.1109, 1110)

      g.  Zaktez.com (PageID.1111).

See **<u>Exhibit E</u>**, List of Connections. With respect to the stores registered to Lam Nguyen, Do Trung, and Macy Daughtery, Defendants denied "own[ing] any other domain name or website or store besides the sixteen domain names I already listed and Printable (sic) is not affiliated with any other domain name or store either." PageID.681. This, very clearly, was a lie.

      Outside of the stores previously identified by DeYoung in his Motion for Preliminary Injunction as having violated this Court's TRO order, BGroups' production also identified the

following stores, which offered for sale and sold DeYoung's works without authorization in violation of the Court's TRO order:

1. Registered to Lam Nguyen: pushfully.onshopbase.com, leruitry.com, and wisdota-com.onshopbase.com;

2. Registered to Macy Daughtery: efourse.com, univeme.onshopbase.com, ascenpo.com, encedire.com, gerlati.com, hodero.onshopbase.com, ciansfin.com, greydard.com, implaker.com, broweboy.onshopbase.com, btrone.onshopbase.com, sysnesty.onshopbase.com, quantzar.onshopbase.com, and azcozyhubs.com;

3. Registered to Joslyn Clow: mulinger.onshopbase.com, flossibi.com, holohor1.onshopbase.com, and palmeyhomey.com.

See **Exhibit E**, List of Connections.

Subsequent to the issuance of the Court's preliminary injunction, DeYoung believes, and has collected evidence that he believes supports, that Defendants have continued to infringe and have moved their counterfeiting operations from ShopBase to Shopify and self-hosted WooCommerce webstores. DeYoung now seeks to hold Defendants in contempt for their numerous violations of this Court's orders.

> **c. Defendants have violated the Court's preliminary injunction by transferring assets out of its PayPal accounts, which were to be frozen under the temporary restraining order and preliminary injunction.**

Subsequent to the issuance of the preliminary injunction in this case, DeYoung discovered another website owned and operated by Defendant Printabel, cupbase.com. Counsel for DeYoung performed a test buy from this website and discovered that the PayPal account associated with it is registered to Printabel Company Limited was not previously discovered by DeYoung, frozen, or disclosed by Printabel to this Court. See **Exhibit F**, Test Buy. The

information obtained from this test buy was provided to counsel for PayPal, and PayPal executed

a freeze on the account associated with cupbase.com in compliance with the Court's preliminary

injunction. PayPal then produced the account information associated with this account, which

shows that the account is registered to Defendant Phan and has received $5,585,747.50 in

payments since it was opened in November of 2018. See **Exhibit G**, Account Information.

Though this account was previously connected to a First Century Bank N.A./Payonner account

ending in 7110, an account that was not previously identified as belonging to Defendants, it is

now connected to a Bank of America account ending in 6433. See **Exhibit G**, Account

Information.

On February 17, 2020, after the issuance of the preliminary injunction in this case and

after counsel had made an appearance on behalf of Defendant Printabel in this honorable Court,

Printabel transferred $327,900 out of this newly-discovered PayPal account to an account held

with Bank of America with knowledge that these funds were to be frozen under the Court's order

and in violation of the clear intent of the Court's preliminary injunction. See **Exhibit H**, Account

Transactions. DeYoung now seeks to hold Defendants in contempt for violating this Court's

preliminary injunction and seeks expedited discovery as to all bank accounts held by Defendants

and the Newly Discovered Parties at Bank of America.

### d. Defendants continue to infringe upon DeYoung's rights even after the issuance of the preliminary injunction.

Even as of the drafting of this motion, Defendants continue to violate the Court's

preliminary injunction. DeYoung has identified three new websites, comfyhubz.com,

cozyfrabiz.com, and theloosdecor.com, which offer for sale blankets and rugs bearing

DeYoung's Trout Confetti 1. See **Exhibit I**, Newly Infringing Websites. Comfyhubz.com and

cozyfrabiz.com bear the same Hazelhurst Dr., Houston, Texas address as azcozy.com did. See

**Exhibit I**, Newly Infringing Websites; see also PageID.83 (showing Hazelhurst address on azcozy.com). All three websites are hosted via BGroup's ShopBase platform. A test buy from comfyhubz.com shows that the PayPal account associated with it is registered to E-Moon Asia Co., Ltd., with an email address of support@larosashop.com. See **Exhibit J**, Printout of Test Buy. A visit to larosashop.com shows, in the header, reference to San Pham, an individual identified in BGroup's production as an employee of Printabel. See **Exhibit K**, Printout of larosashop.com; see also **Exhibit C**, Store Staff; **Exhibit E**, List of Connections to Printabel. Just like the other Printabel entities, E-Moon Asia Co., Ltd. has numerous consumer complaints that it is a scam. See **Exhibit L**, Printout of Consumer Complaints. Defendants are insistent on continuing their infringement in violation of DeYoung's works and should be ordered to show cause as to why they should not be held in civil and criminal contempt.

> **e.  Defendants should be held in civil and criminal contempt for their violations of the Court's temporary restraining order and preliminary injunction.**

The movant in a civil contempt proceeding must establish by clear and convincing evidence that the defendant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Glover*, 934 F.2d at 707. For criminal contempt, federal courts "have power to punish by fines or imprisonment, or both, at its discretion, such contempt of its authority, and not other, as… [d]isobedience or resistance to its lawful writ, process, order, rule decree, or command." 18 U.S.C. § 401. Civil contempt is distinguished from criminal contempt in that civil contempt orders impose remedial damages and sanctions intended to coerce compliance with court orders, whereas criminal contempt orders punish a party for past behavior. *International Union, UMW v. Bagwell*, 512 U.S. 821, 829, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) ("[A] contempt fine

accordingly is considered civil and remedial if it… compensate[s] the complainant for losses sustained.").

Here, Plaintiff has established with clear and convincing evidence that Defendants violated the Court's temporary restraining order and Defendants should show cause as to why they should not be held in civil or criminal contempt. Defendants were served with the temporary restraining order on January 27, 2020. PageID.256. That order enjoined and restrained

> Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order… from:
>
>    a. Reproducing, preparing derivative works of, distributing copies of, and displaying publicly Plaintiff DeYoung's Trout Confetti 1 work;
>
>    b. Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiff DeYoung's Trout Confetti 1 trade dress or any confusingly similar trade dress;
>
>    c. Secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (a) any products bearing Plaintiff DeYoung's Trout Confetti 1; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of products bearing Plaintiff DeYoung's Trout Confetti 1 trade dress or any confusingly similar trade dress….

PageID.226-232. Additionally, these parties, including "all persons in active concert or participation with them having notice of this Order…" were to "IMMEDIATELY DISCONTINUE the use of the Trout Confetti 1 trade dress or any confusingly similar trade dress on or in connection with the sale of goods and all internet websites owned and operated or controlled by them." PageID.504. After being served with this Order, Defendants continued to infringe upon DeYoung's rights by reproducing, preparing derivative works of, distributing copies of, displaying publicly, advertising, promoting, and offering to sell products bearing DeYoung's Trout Confetti 1. See PageID.318, 323, 335 (azdecorus.com); PageID.320, 322 (strantie.com); PageID.326 (kzandshuri.com); PageID.335 (printabel.net); PageID.413

(azcozy.com); PageID.414 (cozzian.com); PageID.415 (hmcozy.com). Further, Defendants acted "in active concert or participation" with the Newly Identified Parties to continue to infringe upon DeYoung's rights after the entry of the TRO. See PageID.317, 319 (cubebui.com); PageID.321, 411 (lushsneaker.com); PageID.410 (deplonia.com); PageID.1103 (richleen.com); PageID.1104 (scansimo.com); PageID.1105 (sporcpea.com); PageID.1106 (stipede.com); PageID.1107 (sublacti.com); PageID.1108 (tonewavi.com); PageID.1109, 1110 (wysdman.com); PageID.1111 (zaktez.com). Defendants did so while representing to this Court under penalty of perjury in the Declaration of Dong Thuy Phan Thien Ha that they only own sixteen websites, that they do not "own any other domain name or website or store besides the sixteen domain names...," and that "Printable (sic) is not affiliated with any other domain name or store either." PageID.680-681. This was very clearly false, and these statements were made to deceive the Court into believing that the Defendants' scheme was one of limited scope and danger to DeYoung and the public.

Defendants have also violated the Court's preliminary injunction. Under the terms of that Order,

> PayPal, Inc. ("PayPal") and its related companies and affiliates will continue to restrain all funds identified by PayPal as related to the PayPal account recipients BGroup, Ltd., Manh Quan Truong, Printabel Company Limited, and Thuy Phan Thien Ha Dong... as well as all funds in or which are transmitted into (i) any other related accounts of the same customer(s), and (ii) any other accounts which transfer funds into the same financial institution account(s). The restrained funds may be released only by future order of this Court.

PageID.1295. Having full knowledge of this Order restraining all funds in Defendants' PayPal accounts, on February 17, 2020, Defendants transferred $327,000 out of one of its PayPal

accounts to an account held with Bank of America. See **Exhibit H**, Account Transactions. Upon information and belief, Defendants have since funneled this money to Vietnam.

And, as stated above, Defendants continue to violate the preliminary injunction today by operating three additional websites selling works bearing DeYoung's Trout Confetti 1, comfyhubz.com, cozyfrabiz.com, and theloosdecor.com. See **Exhibit I**, Newly Infringing Websites.

For these reasons, DeYoung requests that the Court issue an order to require Defendants to show cause as to why they should not be held in civil and criminal contempt. For the violations of the Court's temporary restraining order, DeYoung seeks civil contempt and requests that the Court grant DeYoung remedial damages and sanctions in the amount of the costs and attorneys' fees expended by DeYoung to identify Defendants' additional infringement, identify the Newly Discovered Parties and their connections to Defendants, and file this Motion. These attorneys' fees can be submitted to the Court by DeYoung through a bill of costs and fees subsequent to any order by the Court. For Defendants' violation of the Court's preliminary injunction, DeYoung requests that the Court hold Defendants in civil contempt by requiring Defendants to return the $327,000 removed subsequent to the Court's preliminary injunction to Defendants' PayPal account and hold Defendants in criminal contempt by fining them $10,000 in punishment for Defendants' violation of the Court's order.

### f.  DeYoung seeks leave to amend to add the Newly Identified Parties and Claims

Due to the evidence discussed above, which establishes the connections between Defendants and the Newly Identified Parties, DeYoung seeks leave to amend to add these parties as Defendants. DeYoung has established good cause for amendment by presenting evidence of Defendants' and the Newly Identified Parties' common ownership and control over thirty-six

additional websites, email addresses, and payment accounts. See **Exhibit E**, List of Connections to Printabel.

Further, DeYoung seeks leave to amend to add two additional claims: (1) trademark infringement under Section 43 of the Lanham Act; and (2) misappropriation of name or likeness under Michigan common law. Under Section 43(a)(1) of the Lanham Act, any person using a word, name, or false designation of origin in connection with the sale of goods, which is likely to cause confusion or to deceive the public as to the sponsorship of the person's goods, is liable to any person damaged. See 15 U.S.C. § 1125(a). Section 43(a) supports actions for common law trademark infringement because the use of another's trademark, a name, symbol, or device may create confusion as to the "origin" of his goods or as to an "affiliation, connection, or association" between his goods and the trademark holder. 15 U.S.C. § 1125(a). At common law, "palming off" would occur where a defendant attempted to confuse consumers by deceiving consumers into purchasing its products under the mistaken belief that they were purchasing the plaintiff's products. *See Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987); *see Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670, F.2d 642, 645, 646-47 & n.3 (6th Cir.), cert. denied, 459 U.S. 916, 103 S. Ct. 231, 74 L. Ed. 2d 182 (1982). Section 43(a) of the Lanham Act similarly prohibits "palming off" under its "false designation of origin" language. *Frisch's*, 670 F.2d at 646-47.

Michigan law also provides for a cause of action for misappropriation of name or likeness. This invasion of privacy cause of action is founded upon "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." 3 Restatement Torts, 2d, § 652, comment a. This right "is in the nature of a property right," which is violated whenever "the

defendant makes use of the plaintiff's name or likeness for his own purposes and benefit." *Id*., comment b. Therefore, "in contrast to the other forms of invasion of privacy, there need be no allegation that a statement about a plaintiff was an intrusion upon seclusion or private matters or that it was in any way false. Instead, any unauthorized use of a plaintiff's name or likeness, however inoffensive in itself, is actionable if that use results in a benefit to another." *Battaglieri v. Mackinac Ctr. For Pub. Policy*, 261 Mich. App. 296, 300-01, 680 N.W.2d 915, 919 (2004).

DeYoung's proposed amendments are not futile, nor have they been caused by undue delay in filing, bad faith, or repeated failure to cure previous deficiencies. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (*quoting Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). To establish a claim for false designation of origin, DeYoung must demonstrate that: (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion. *See Johnson v. Jones*, 149 F. 3d 494, 502 (6th Cir. 1998). To establish a claim for misappropriation of name or likeness, DeYoung must demonstrate that the defendant used his name or likeness for a predominantly commercial purpose and without a redeeming public interest, news, or historical value. *See Bowens v. Aftermath Entm't*, No 250984, 2005 Mich. App. LEXIS 988, at *22 (Ct. App. Apr. 19, 2005).

DeYoung has been utilizing his distinctive DEYOUNG mark in association with the sale and offering for sale of his original fine art pieces and online retail store services since as early as 2006. See **Exhibit M**, Declaration of DeYoung. DeYoung has also filed an application for trademark registration with the US Patent and Trademark Office under Serial No. 88,814,212 and for use in association with the same goods and services. As a result of this longstanding use of DEYOUNG in association with these services, the DEYOUNG trademark has become

distinctive. *See Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 556 (6th Cir. 2013) (*citing Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2nd Cir. 2003) for the proposition that marks containing personal names may require secondary meaning)). Case law makes clear that, where a mark like DEYOUNG is affixed to an original work of art, that term functions as a mark. *In re Wood*, 217 USPQ 1345, 1350 (TTAB 1983) (stating that "[l]est we be accused of painting with too broad a brush, we hold only that an artist's name affixed to an original work of art may be registered as a mark and that here applicant's name, as evidenced by some of the specimens of record [the signature of the artist on a work of art], functions as a trademark for the goods set forth in the application."). Similarly, the commercial use of a plaintiff's name is actionable if it is for commercial purposes. See *Battaglieri*, 261 Mich. App. at 301.

Defendants have placed the DEYOUNG name and mark on physical products and have offered those products for sale to consumers in commerce and for commercial purposes, which has created not only a likelihood of confusion, but actual confusion, and constitutes misappropriation of DeYoung's name or likeness. See PageID.28-30 (discussing the likelihood of confusion factors and their application to Defendants' products); see also PageID.337 (wherein Defendant Phan admits to damaging DeYoung's "brandname"); PageID.1043 (wherein Bryanna Whitney admits to purchasing a counterfeit rug from Defendants because she believed that it was authorized by DeYoung); PageID.1046 (wherein Cory Walsworth admits to purchasing a counterfeit rug from Defendants because he believed that it was authorized by DeYoung); **Exhibit O**, Photo of Counterfeit Rug. These facts make clear that DeYoung's proposed amendment is not futile. Nor has there been improper delay or undue prejudice to Defendants; the need for amendment was, in fact, caused by Defendants' attempts to conceal

relevant parties and evidence and its ownership and control over thirty-six additional websites.

DeYoung's counsel did not discover that DeYoung's name and mark was being placed on goods

sold by Defendants until February 12, 2020, two days prior to the parties' hearing on DeYoung's

Motion for Preliminary Injunction. DeYoung has diligently worked to uncover the facts

supporting these claims since that time and, for this reason, granting leave to amend is proper.

### g.   DeYoung seeks additional expedited discovery to identify Defendants' hidden payment accounts, bank accounts, and additional websites.

Pursuant to Fed. R. Civ. P. 26(b)(2), courts have broad power over the discovery process

to permit early discovery to aid in the identification of unknown defendants and financial

accounts. In the Sixth Circuit, expedited discovery may be had on a showing of good cause and

where the party seeking discovery demonstrates the need to deviate from the normal timing of

discovery. *See Arab Am. Civil Rights League v. Trump*, No. 17-10310, 2017 U.S. Dist. LEXIS

221148, at *6-7 (E.D. Mich. Mar. 31, 2017).

DeYoung seeks additional expedited discovery because the discovery produced by

BGroup has made clear that Defendants have registered multiple domain names, bank accounts,

and user accounts with a variety of service providers in an effort to hide their concerted scheme

and their finances from this Court. Specifically, DeYoung has identified forty-six additional

websites that are believed to be operated by Defendants and that have infringed upon DeYoung's

works, trademarks, and trade dress. See **Exhibit N**, Additional Infringing Websites. These

websites have either been identified as owned by Defendant Printabel through the discovery

provided by BGroup or have used the same images, product codes, works, or product

descriptions as those of websites owned by Defendant Printabel. See **Exhibit E**, List of

Connections to Printabel. These domain names also share common characteristics. They are all

registered with either NameCheap, Inc., GoDaddy, LLC, or Donuts, Inc.'s Name.com. See

**Exhibit N**, Additional Infringing Websites. They all use CloudFlare, Inc.'s reverse proxy service, which obscures the true location of where a website is hosted by acting as a pass-through computer for all requests sent to a domain name, to hide the true location of where their website content is hosted. See **Exhibit N**, Additional Infringing Websites. And, when DeYoung's counsel has attempted to access many of these websites from his office, he has been blocked from doing so because Printabel has blocked his IP addresses from accessing their websites through CloudFlare's reverse proxy service in an effort to hide their infringement. See PageID.1217-1221 (showing IP blocks).

DeYoung also seeks expedited discovery from Bank of America to discover all bank accounts held by Defendants and the Newly Identified Parties at that institution. As stated above, subsequent to the preliminary injunction, Defendants transferred $327,900 to a Bank of America account ending in 6433. See **Exhibit G**, Account Information. This is a newly identified account that was tied to Defendants' PayPal account. DeYoung expects, just like at Payoneer, Defendants hold multiple Bank of America accounts that have not been disclosed. DeYoung seeks discovery to identify these accounts and the transaction history for them over the last ninety (90) days to identify any further transfers that may have been in violation of this Court's orders.

For these reasons, DeYoung requests that the Court grant additional expedited discovery so that he may subpoena information from NameCheap, Inc., GoDaddy, LLC, Cloudflare, Inc., Bank of America, and PayPal to identify the following information: (1) the names and contact information through which Defendants have registered these websites; (2) the identity of any other websites within the ownership, possession, or control of Defendants; (3) the names, contact information, and website URLs associated with the Cloudflare reverse proxy service used by Defendants; (4) the PayPal accounts associated with these websites; and (5) the bank accounts

held by Defendants at Bank of America. This expedited discovery is intended to ensure compliance with the Court's preliminary injunction and to identify all other parties or false identities under which Defendants have operated their scheme.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Consolidated Motion for Leave to Amend, Order to Show Cause as to Why Defendants Printabel Company Limited and Phan Should Not Be Held in Contempt, and for Additional Expedited Discovery.


Respectfully submitted,


Date: February 28, 2020                    Derek DeYoung

                                           /s/ John Di Giacomo
                                           John Di Giacomo
                                           Eric Misterovich
                                           Amanda Osorio
                                           *Attorneys for Plaintiff*
                                           Revision Legal, PLLC
                                           444 Cass St., Suite D
                                           Traverse City, MI 49684
                                           Phone: (231) 714-0100
                                           Fax: (231) 714-0200
                                           john@revisionlegal.com
                                           eric@revisionlegal.com
                                           amanda@revisionlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2020, I electronically filed the foregoing Consolidated Motion for Leave to Amend, Order to Show Cause as to Why Defendants Printabel Company Limited and Phan Should Not Be Held in Contempt, and for Additional Expedited Discovery on counsel of record by electronic filing through the ECF system.


Date: February 28, 2020                    Derek DeYoung

                                           /s/ John Di Giacomo
                                           John Di Giacomo
                                           Eric Misterovich
                                           Amanda Osorio
                                           *Attorneys for Plaintiff*
                                           Revision Legal, PLLC
                                           444 Cass St., Suite D
                                           Traverse City, MI 49684
                                           Phone: (231) 714-0100
                                           Fax: (231) 714-0200
                                           john@revisionlegal.com
                                           eric@revisionlegal.com
                                           amanda@revisionlegal.com