## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

DEREK DEYOUNG,
a resident of Michigan, and

      Plaintiff,                        Case No.: 1:20-cv-51

        v.

PRINTABEL COMPANY LIMITED, a Hong
Kong limited by shares company,

THUY PHAN THIEN HA DONG, an individual,

LAM NGUYEN, an individual,

MACY DAUGHTERY, an individual,

JOSLYN CLOW, an individual,

DO TRUNG, an individual,

SANTINO BRUEN, an individual, and

DOES 1-10,

      Defendants.

_____

### SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

      For his Second Amended Complaint and Demand for Jury Trial in this matter, Plaintiff

Derek DeYoung, by and through his attorneys Revision Legal, PLLC, states as follows:

### I.  PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Derek DeYoung ("DeYoung") is a resident of the State of Michigan with his

    principal residence in Traverse City, Michigan.

2. Defendant Printabel Company Limited ("Printabel") is a Hong Kong limited by shares company with its registered address as Unit 1411, 14th Floor, Cosco Tower, 183 Queen's Road Central, Sheung Wan, Hong Kong.

3. Defendant Thuy Phan Thien Ha Dong ("Dong") is listed as the sole director and officer of Printable, with a listed residential address of 180-182 Nguyen Cong Tru Street, Nguyen Thai Binh Ward, District 1, Ho Chi Minh City, Vietnam.

4. Defendant Lam Nguyen ("Nguyen") is an individual resident of Ho Chi Minh City, Vietnam who uses the email address chunzhuzhu123@gmail.com and has been identified through discovery as acting in concert with Defendants Printabel and Dong to infringe upon Plaintiff DeYoung's rights.

5. Defendant Macy Daughtery ("Daughtery") is an individual who uses the email address azcozy.com@gmail.com and is believed to be a resident of Ho Chi Minh City, Vietnam and has been identified through discovery as acting in concert with Defendants Printabel and Dong to infringe upon Plaintiff DeYoung's rights.

6. Defendant Joslyn Clow ("Clow") is an individual who uses the email address lionbreak.com@gmail.com and is believed to be a resident of Ho Chi Minh City, Vietnam who has been identified through discovery as acting in concert with Defendants Printabel and Dong to infringe upon Plaintiff DeYoung's rights.

7. Defendant Do Trung ("Trung") is an individual who uses the email address nguyentrungmeo1233@gmail.com and is believed to be a resident of Ho Chi Minh City, Vietnam who has been identified through discovery as acting in concert with Defendants Printabel and Dong to infringe upon Plaintiff DeYoung's rights.

8.  Defendant Santino Bruen ("Bruen") is an individual who uses the email address
    annaandmary.com@gmail.com and is believed to be a resident of Ho Chi Minh City,
    Vietnam who has been identified through discovery as acting in concert with Defendants
    Printabel and Dong to infringe upon Plaintiff DeYoung's rights.

9.  This Court has subject matter jurisdiction over the claims asserted by DeYoung pursuant
    to 17 U.S.C. § 411, 28 U.S.C. § 1338(a) and (b), 28 U.S.C. § 1331, and 15 U.S.C. § 1121.

10. This Court has supplemental jurisdiction over DeYoung's state-law claims under 28
    U.S.C. § 1367(a) because the state law claims are so related to the federal claims that
    they form part of the same case or controversy and derive from a common nucleus of
    operative facts.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Personal jurisdiction is proper over Defendants because exercise thereof would not
    offend traditional notions of fair play or substantial justice because Defendants have
    purposefully availed themselves of this forum state, the cause of action arises from
    Defendants' activities here, and the Defendants' actions have caused damage to a
    Michigan resident.

13. Specifically, Defendants purposefully and intentionally availed themselves of this forum
    state by manufacturing, importing, distributing, offering for sale, displaying, advertising,
    and selling counterfeit goods bearing DeYoung's, a resident of this state, Trout Confetti
    1, Tarpon Flank—Late, and Dream Double 1 creative works, by manufacturing,
    importing, distributing, offering for sale, displaying, advertising, and selling counterfeit
    goods bearing DeYoung's trademark and trade dress, by creating and operating
    interactive websites that reveal specifically intended interactions with residents of the

State of Michigan, and by creating Facebook advertisements selling counterfeit goods specifically to residents of the State of Michigan.

14. Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

15. Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

16. Further, Defendant Dong personally participated in the actual infringement of Defendant Printabel, derived financial benefit from the infringing activities of Defendant Printabel, used Printabel Company Limited as an instrument to carry out a deliberate and willful scheme to infringe on the copyright, trademark, and trade dress rights of DeYoung and others, was the dominant influence in Defendant Printabel and determined the policies that resulted in the infringement complained of, and aided and abetted the infringement of the other named Defendants.

**PLAINTIFF'S BUSINESS**

17. Derek DeYoung ("DeYoung") is a well and widely known artist and a graduate of the Kendall College of Art and Design with his principal residence and place of business in Traverse City, Michigan.

18. DeYoung's artistic works primarily focus on fish and fishing, and, in particular, the sport of fly fishing. DeYoung's unique style presents a deviation from traditional fly-fishing

art, which typically uses a palate of natural colors, because his work emphasizes the rich and vibrant colors of the fish to produce a compelling result that is unlike any other artist in the field.

19. Due to the uniqueness of his work, DeYoung has contributed his art to products produced by some of the world's largest manufacturers and retailers of sporting equipment and accessories, including collaborations with Burton Snowboards, Abel Reels, Simms, Costa, OtterBox, Buff, and Wingo Outdoors.

20. Among DeYoung's works, "Trout Confetti 1" is one of the more popular.



21. Trout Confetti 1 is an original work of art created by DeYoung that is available for purchase through DeYoung's website, https://www.derekdeyoung.com, for a price ranging from $120 (13in x 9in giclee print) to $1,950 (40in x 60in metal print).

22. Trout Confetti 1 has also been featured on a number of products, including headwear, phone cases, and glasswear.

23. DeYoung filed for and obtained copyright registration of Trout Confetti 1 on October 4, 2013 with the United States Copyright Office and under Registration Number VA 1-970-688 ("Trout Confetti 1").

24. Another of DeYoung's works is "Tarpon Flank—Late:"



25. Tarpon Flank—Late has been featured on headwear, including hats, sold by Buff and under license from DeYoung.

26. Tarpon Flank—Late has also been sold on fly boxes, sunglass cleaning cloths, can holders, and mousepads through DeYoung's website. These products range in price from $5 to $40.

27. Tarpon Flank—Late is also sold through DeYoung's website for prices ranging from $257 to $1,950.

28. DeYoung filed for and obtained registration of Tarpon Flank—Late on August 15, 2016 with the US Copyright Office under Registration Number VA0002076127 ("Tarpon Flank—Late").

29. DeYoung is also the creator of Dream Double 1:



30. Dream Double 1 is sold through DeYoung's website for prices ranging from $120 to $1,000.

31. DeYoung filed for and obtained copyright registration of Dream Double 1 with the US Copyright Office on October 23, 2014 and under Registration Number VA0001934594 ("Dream Double 1").

## PLAINTIFF'S TRADEMARK RIGHTS

32. DeYoung is the owner of an application for registration of DEYOUNG (Serial No. 88,814,212), which is pending registration for use in association with paintings and

online retail store services featuring artwork, apparel, stickers, phone cases, drinkware, blankets, playing cards, boat wraps, coasters, and coolers.

33. DeYoung has consistently and exclusively used the DEYOUNG mark in association with the sale and offering for sale of fine art paintings since as early as November 2, 2006.

34. DeYoung has also consistently and exclusively used the DEYOUNG mark in association with online retail store services featuring artwork, apparel, stickers, phone cases, drinkware, blankets, playing cards, boat wraps, coasters, and coolers since as early as October 1, 2006.

35. DeYoung has expended significant sums in advertising the DEYOUNG mark throughout the United States.

36. DeYoung's DEYOUNG mark has obtained distinctiveness through secondary meaning.

37. As a result of DeYoung's consistent, continuous, and exclusive use of DEYOUNG in commerce, DeYoung's DEYOUNG mark has become well and favorably known across the United States and DeYoung has obtained common law trademark rights in and to the DEYOUNG mark.

**DEFENDANTS AND THEIR BUSINESS**

38. Defendant Printabel Company Limited ("Printabel") is a Hong Kong limited by shares company with its registered address as Unit 1411, 14th Floor, Cosco Tower, 183 Queen's Road Central, Sheung Wan, Hong Kong.

39. Defendant Thuy Phan Thien Ha Dong ("Dong") is listed as the sole director and officer of Printable.

40. Printabel's website, <printabel.net>, claims that the company is located at 4953 International Dr., Orlando, Florida 32819 and that it was founded by "Mr. Brayden

Rogers" in 2014 in Cochise, Arizona. Notably, however, the Printabel.net domain name was registered on August 14, 2019 and the company's Hong Kong business entity was formed on February 6, 2018.

41. Printabel is a retailer of clothing and home goods, including, but not limited to, rugs, bedding, t-shirts, and sweatshirts that are sold through various websites under its ownership and control, including its <printabel.net> website.

42. Printabel and its associated companies sell these products primarily by serving targeted advertisements to users of the Facebook social media platform.



43. Printabel also operates under numerous other names, including, but not limited to, LushGood, Kaylee and Tepid, AZCozy, HMCozy, BeddingHolic, SixteenthWorld, CherishCosy, Cozzian, TheProudNative, Voztee, Nexttee.us, Printzily, Humpine, PowWow.Store, MerchFactory.Sale, Duhastore, LannaDecor, ProudThunderbird, Cozynfancy, Isimpleidea, Univeme, CubeBui, AZDecor, Strantie, Lush Sneaker, Cozy & Homey, KZ and Shuri, Preochy, Deploina, Blue Tee, and Aquacozy.

44. These stores share the same characteristics: (1) they utilize ShopBase as their hosting provider; (2) they falsely list a United States address as the listed address of the company; and (3) they maintain the same "About" page falsely stating that the company was "[f]ounded in 2014 by Mr. Brayden Rogers" in Cochise, Arizona."

45. These stores are subject to numerous consumer complaints, ranging from defective and deceptive products to failure to deliver any product at all.

46. And these websites also falsely display the Better Business Bureau logo and A+ rating when, in fact, they are not accredited in any manner.

47. In fact, the Better Business Bureau entry for AZCozy states:

> Beginning September 2019, the BBB began receiving complaints that indicate this business has a pattern of complaints concerning the quality of the products received compared to the pictures shown on the company's website. Consumer's complaints allege the items they received are inferior or low in quality and easily fell apart when compared to the advertisement pictures. Complainants stated when they contact the company to complain, they are told they can ship the products back to China for a refund. Consumers have also alleged shipping is delayed or products are not received.
>
> Consumers have stated they became aware of the company because of the sponsorship on Facebook.
>
> Consumers who stated when they try to contest the purchase with PayPal, it is denied.

48. Defendants Nguyen, Daughtery, Clow, Trung, and Bruen are, upon information and belief, employees of Defendant Printabel.

49. Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in aiding Defendant Printabel's business by registering web hosting accounts and creating websites on behalf of Printabel's business.

50. Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have aided Printabel's efforts by acting in concert with it to operate websites that advertise, display, and sell images and goods.

51. Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have aided Printabel to avoid detection, specifically, by creating a web of websites and payment accounts that cannot be easily traced by to Defendant Printabel.

52. Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have further aided Printabel by operating websites on its behalf and by transferring the proceeds from those websites into payment and bank accounts owned by Printabel.

**DEFENDANTS' INFRINGEMENT OF PLAINTIFF DEYOUNG'S RIGHTS**

53. On November 14, 2019, DeYoung noticed that a number of sellers were advertising the sale of products bearing Trout Confetti 1 through the Facebook platform.

54. Among these sellers was Defendant Printabel, which was selling a rug bearing DeYoung's Trout Confetti 1 work.

55. That same day, DeYoung personally sent a notice of claimed infringement to Defendant Printabel to Defendant's email address support@hmcozy.com.

56. DeYoung also personally sent a notice of claimed infringement to Defendant Printabel to Defendant's email address at support@azcozy.com.

57. And DeYoung personally sent a notice of claimed infringement to Defendant Printabel to Defendant's email at kaylee@kayleeandtepid.com.

58. Having received no response to these notices of claimed infringement, and because Defendants did not remove the infringing works complained of, on or about November 16, 2019, DeYoung engaged counsel to send a notice of claimed infringement to ShopBase, Printabel, and Amazon AWS, Printabel's hosting company.

59. Printabel responded to this notice by removing the specific URL at which the rug was displayed, but it did not cease selling the rug or otherwise remove it from its website.

60. Said another way, Prinabel merely hid the fact that it continued to sell the rug containing DeYoung's work.

61. On November 18, 2019, DeYoung, through counsel, submitted a notice of claimed infringement to PayPal, Printabel's merchant account provider.

62. On November 19, 2019, a second notice of claimed infringement was submitted to Amazon and one to Facebook concerning a new link displaying a rug bearing Trout Confetti 1.

63. And on November 20, 2019, a third notice of claimed infringement was submitted to Amazon.

64. Printabel responded on November 20, 2019 stating that it would delete the design.

65. However, Printabel merely hid the design on its website.

66. After further investigation through counsel, DeYoung identified over seventy different listings attributable to Defendants that advertise and offer for sale products bearing DeYoung's works.

67. These listings were made available on over forty websites under the ownership and control of Defendants.

68. On January 22, 2020, this Court issued a temporary restraining order enjoining and restraining Defendants from continuing to infringe upon DeYoung's rights.

69. Despite having been served with the temporary restraining order, Defendants continued to sell and offer for sale goods bearing DeYoung's Trout Confetti 1.

70. Additionally, subsequent to the temporary restraining order, DeYoung discovered that Defendants were also selling goods bearing his Tarpon Flank—Late and Dream Double 1 works through the same websites through which Defendants continued to sell DeYoung's Trout Confetti 1 work, including Deploina, Lush Sneaker, Blue Tee, AZCozy, Cozzian, and HMCozy.

71. On February 14, 2020, the Court issued a preliminary injunction continuing the terms of the temporary restraining order.

72. Both before and subsequent to the preliminary injunction, Defendants have employed the services of Defendants Nguyen, Daughtery, Clow, Trung, and Bruen to open websites and payment accounts under their own names to avoid detection and to circumvent the Court's orders.

73. To this day, Defendants continue to infringe upon DeYoung's rights in violation of the Court's preliminary injunction.

## <u>COUNT I – COPYRIGHT INFRINGEMENT</u>

74. DeYoung incorporates all foregoing paragraphs as if fully restated herein.

75. DeYoung owns a copyright registration for Trout Confetti 1.

76. DeYoung owns a copyright registration for Tarpon Flank—Late.

77. DeYoung owns a copyright registration for Dream Double 1.

78. DeYoung's Trout Confetti 1 and Tarpon Flank—Late are widely disseminated through DeYoung's own website and on physical products.

79. DeYoung's Dream Double 1 is widely disseminated through DeYoung's website.

80. Defendants had access to DeYoung's Trout Confetti 1, Tarpon Flank—Late, and Dream Double 1 works.

81. Defendants downloaded DeYoung's Trout Confetti 1, Tarpon Flank—Late, and Dream Double 1 works from his website for use in their infringement scheme.

82. Defendants have reproduced, prepared derivative works of, distributed copies of, and displayed public works that are identical copies of, and substantially similar to, DeYoung's Trout Confetti 1, Tarpon Flank—Late, and Dream Double 1 works.

83. Defendant Dong directly authorized, directed, and participated in Printabel's infringing activity.

84. Specifically, Dong personally participated in the actual infringement of Defendant Printabel, derived financial benefit from the infringing activities of Defendant Printabel, used Printabel Company Limited as an instrument to carry out a deliberate and willful scheme to infringe on the copyright, trademark, and trade dress rights of DeYoung and others, was the dominant influence in Defendant Printabel and determined the policies that resulted in the infringement complained of, and aided and abetted the infringement of the other named Defendants.

85. Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods

that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

86. Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

87. As a result of Defendants' infringement, DeYoung has suffered monetary damages.

88. DeYoung is entitled to the recovery of, at its election, statutory damages, actual damages, Defendants' profits, and the costs of this action.

89. DeYoung is also entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

90. And DeYoung is also entitled its attorneys' fees pursuant to 17 U.S.C. § 505.

## <u>COUNT II – TRADE DRESS INFRINGMENT</u>

91. DeYoung incorporates all foregoing paragraphs as if fully restated herein.

92. DeYoung is the owner of the Trout Confetti 1 trade dress.

93. DeYoung is also the owner of the Tarpon Flank—Late trade dress.

94. DeYoung has continuously and exclusively used the Trout Confetti 1 trade dress in association with the sale and offering for sale of headwear, phone cases, and glasswear since as early as June 2012.

95. DeYoung has also continuously and exclusive used the Tarpon Flank—Late trade dress in association with the sale and offering for sale of fly boxes, sunglass cleaning cloths, can holders, mousepads, and headwear since as early as March of 2017.

96. The Trout Confetti 1 and Tarpon Flank—Late trade dress is non-functional.

97. Through DeYoung's longstanding use of the Trout Confetti 1 trade dress, the Trout Confetti 1 trade dress has acquired distinctiveness through secondary meaning.

98. Through DeYoung's longstanding use of the Tarpon Flank—Late trade dress, the Tarpon Flank—Late trade dress has acquired distinctiveness through secondary meaning.

99. Defendants have used the Trout Confetti 1 trade dress in commerce in association with the sale and offering for sale of bedding, rugs, and clothing goods.

100. Defendants have used the Tarpon Flank—Late trade dress in commerce in association with the sale and offering for sale of hats.

101. Defendants' use of the Trout Confetti 1 and Tarpon Flank—Late trade dress is commercial in nature.

102. Defendants' use of the Trout Confetti 1 and Tarpon Flank—Late trade dress is likely to cause confusion, to cause mistake, and to deceive the public by suggesting that Defendants' goods are authorized by, sponsored by, approved by, or affiliated with DeYoung's goods.

103. Defendants' use of DeYoung's Trout Confetti 1 and Tarpon Flank—Late in commerce is likely to confuse the public.

104. Defendant Dong directly authorized, directed, and participated in Printabel's infringing activity.

105. Specifically, Dong personally participated in the actual infringement of Defendant Printabel, derived financial benefit from the infringing activities of Defendant Printabel, used Printabel Company Limited as an instrument to carry out a deliberate and willful scheme to infringe on the copyright, trademark, and trade dress rights of DeYoung and others, was the dominant influence in Defendant Printabel and determined the policies

that resulted in the infringement complained of, and aided and abetted the infringement of the other named Defendants.

106.     Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

107.     Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

108.     Defendants have profited from this consumer confusion by diverting consumers from DeYoung to Defendants.

109.     As a result, DeYoung has suffered monetary damages and a loss of goodwill associated with its Trout Confetti 1 and Tarpon Flank—Late trade dress.

110.     Consequently, Defendants' use of DeYoung's Trout Confetti 1 and Tarpon Flank—Late trade dress constitutes trade dress infringement pursuant to 15 U.S.C. § 1125(a).

111.     DeYoung is entitled to the recovery of Defendants' profits, DeYoung's actual damages, and the costs of this action.

112.     DeYoung is also entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

113.     DeYoung is also entitled to his attorneys' fees consistent with 15 U.S.C. § 1117 because this is an exceptional case.

## COUNT III—VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

114.     DeYoung incorporates all foregoing paragraphs as if fully restated herein.

115.     DeYoung is the owner of the Trout Confetti 1 trade dress.

116.     DeYoung is the owner of the Tarpon Flank—Late trade dress.

117.     DeYoung has continuously and exclusively used the Trout Confetti 1 trade dress in association with the sale and offering for sale of headwear, phone cases, and glasswear since as early as June 2012.

118.     DeYoung has continuously and exclusively used the Tarpon Flank—Late trade dress in association with the sale and offering for sale of hats since as early as March of 2017.

119.     The Trout Confetti 1 and Tarpon Flank—Late trade dress is non-functional.

120.     Through DeYoung's longstanding use of the Trout Confetti 1 and Tarpon Flank—Late trade dress, the Trout Confetti 1 and Tarpon Flank—Late trade dress has acquired distinctiveness through secondary meaning.

121.     Defendants have used the Trout Confetti 1 trade dress in commerce in association with the sale and offering for sale of bedding, rugs, and clothing goods.

122.     Defendants have used the Tarpon Flank—Late trade dress in commerce in association with the sale and offering for sale of hats.

123.     Defendants' use of the Trout Confetti 1 and Tarpon Flank—Late trade dress is commercial in nature.

124.     In using the Trout Confetti 1 and Tarpon Flank—Late trade dress as if it is their own, Defendants have caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods.

125.     Defendants' use of DeYoung's Trout Confetti 1 and Tarpon Flank—Late in commerce is likely to confuse the public.

126.     Defendants have profited from this consumer confusion by diverting consumers from DeYoung to Defendants.

127.     Defendant Dong directly authorized, directed, and participated in Printabel's infringing activity.

128.     Specifically, Dong personally participated in the actual infringement of Defendant Printabel, derived financial benefit from the infringing activities of Defendant Printabel, used Printabel Company Limited as an instrument to carry out a deliberate and willful scheme to infringe on the copyright, trademark, and trade dress rights of DeYoung and others, was the dominant influence in Defendant Printabel and determined the policies that resulted in the infringement complained of, and aided and abetted the infringement of the other named Defendants.

129.     Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

130.     Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

131.     As a result, DeYoung has suffered monetary damages and a loss of goodwill associated with its Trout Confetti 1 trade dress.

132.     Consequently, Defendants' use of DeYoung's Trout Confetti 1 and Tarpon Flank—Late trade dress constitutes a violation of the Michigan Consumer Protection Act.

133.     DeYoung is entitled to the recovery of Defendants' profits, DeYoung's actual damages, and the costs of this action.

134.     DeYoung is also entitled to preliminary and permanent injunctive relief.

135.     DeYoung is also entitled to his reasonable attorneys' fees.

## COUNT IV – COMMON LAW UNFAIR COMPETITION

136.     DeYoung incorporates all foregoing paragraphs as if fully restated herein.

137.     DeYoung is the owner of the Trout Confetti 1 trade dress.

138.     DeYoung is the owner of the Tarpon Flank—Late trade dress.

139.     DeYoung has continuously and exclusively used the Trout Confetti 1 trade dress in association with the sale and offering for sale of headwear, phone cases, and glasswear since as early as June 2012.

140.     DeYoung has continuous and exclusively used the Tarpon Flank—Late trade dress in association with the sale and offering for sale of fly boxes, sunglass cleaning cloths, can holders, mousepads, and headwear since as early as March of 2017.

141.     The Trout Confetti 1 and Tarpon Flank—Late trade dress is non-functional.

142.     Through DeYoung's longstanding use of the Trout Confetti 1 and Tarpon Flank—Late trade dress, the Trout Confetti 1 and Tarpon Flank—Late trade dress has acquired distinctiveness through secondary meaning.

143.     Defendants have used the Trout Confetti 1 trade dress in commerce in association with the sale and offering for sale of bedding, rugs, and clothing goods.

144.     Defendants have used the Tarpon Flank—Late trade dress in commerce in association with the sale and offering for sale of hats.

145.     Defendants' use of the Trout Confetti 1 and Tarpon Flank—Late trade dress is commercial in nature and constitutes a deceptive and unfair business practice.

146.     In using the Trout Confetti 1 and Tarpon Flank—Late trade dress as if it is their own, Defendants have caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods.

147.     Defendants' use of DeYoung's Trout Confetti 1 and Tarpon Flank—Late in commerce is likely to confuse the public.

148.     Defendants have profited from this consumer confusion by diverting consumers from DeYoung to Defendants.

149.     Defendant Dong directly authorized, directed, and participated in Printabel's infringing activity.

150.     Specifically, Dong personally participated in the actual infringement of Defendant Printabel, derived financial benefit from the infringing activities of Defendant Printabel, used Printabel Company Limited as an instrument to carry out a deliberate and willful scheme to infringe on the copyright, trademark, and trade dress rights of DeYoung and others, was the dominant influence in Defendant Printabel and determined the policies

that resulted in the infringement complained of, and aided and abetted the infringement of the other named Defendants.

151.    Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

152.    Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

153.    As a result, DeYoung has suffered monetary damages and a loss of goodwill associated with its Trout Confetti 1 and Tarpon Flank—Late trade dress.

154.    Consequently, Defendants' use of DeYoung's Trout Confetti 1 and Tarpon Flank—Late trade dress constitutes a violation of Michigan unfair competition law.

155.    DeYoung is entitled to the recovery of Defendants' profits, DeYoung's actual damages, and the costs of this action.

156.    DeYoung is also entitled to preliminary and permanent injunctive relief.

## **COUNT V – CIVIL CONSPIRACY**

157.    DeYoung incorporates all foregoing paragraphs as if fully restated herein.

158.    Defendant Printabel and its sole director and officer, Dong, have undertaken a wide-scale scheme to create numerous websites that advertise and sell counterfeit goods bearing DeYoung's Trout Confetti 1 work.

159.     This scheme is aided through the combined actions of Defendants Nguyen, Daughtery, Clow, Trung, and Bruen, who have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

160.     Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

161.     Defendants Dong, Printabel, Nguyen, Daughtery, Clow, Trung, and Bruen have worked to deceive US consumers, including, but not limited to, by falsely stating that they are accredited by the Better Business Bureau and that they maintain US offices.

162.     For these reasons, Defendants may be held liable for civil conspiracy.

163.     Defendants have profited from their conspiracy by diverting consumers from DeYoung to Defendants.

164.     As a result, DeYoung has suffered monetary damages and a loss of goodwill associated with its Trout Confetti 1 work.

165.     DeYoung is entitled to the recovery of Defendants' profits, DeYoung's actual damages, and the costs of this action.

166.     DeYoung is also entitled to preliminary and permanent injunctive relief.

## **COUNT VI – FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a)**

167.     DeYoung incorporates all foregoing paragraphs as if fully restated herein.

168.     DeYoung is the owner of the DEYOUNG mark.

169.     DeYoung has consistently and exclusively used the DEYOUNG mark in association with the sale and offering for sale of fine art paintings since as early as November 2, 2006.

170.     DeYoung has also consistently and exclusively used the DEYOUNG mark in association with online retail store services featuring artwork, apparel, stickers, phone cases, drinkware, blankets, playing cards, boat wraps, coasters, and coolers since as early as October 1, 2006.

171.     DeYoung has expended significant sums in advertising the DEYOUNG mark throughout the United States.

172.     DeYoung's DEYOUNG mark has obtained distinctiveness through secondary meaning.

173.     As a result of DeYoung's consistent, continuous, and exclusive use of DEYOUNG in commerce, DeYoung's DEYOUNG mark has become well and favorably known across the United States and DeYoung has obtained common law trademark rights in and to the DEYOUNG mark.

174.     Defendants have used the DEYOUNG mark in commerce in association with the sale and offering for sale of bedding, rugs, and clothing goods.

175.     Specifically, Defendants have applied the DEYOUNG mark directly to these goods and have offered them in interstate commerce.

176.     Defendants' use of the DEYOUNG mark is commercial in nature.

177.     Defendants' use of the DEYOUNG mark is likely to cause confusion, to cause mistake, and to deceive the public by suggesting that Defendants' goods are authorized by, sponsored by, approved by, or affiliated with DeYoung's goods.

178.     Defendants' use of the DEYOUNG mark in commerce is likely to confuse the public.

179.     Defendant Dong directly authorized, directed, and participated in Printabel's infringing activity.

180.     Specifically, Dong personally participated in the actual infringement of Defendant Printabel, derived financial benefit from the infringing activities of Defendant Printabel, used Printabel Company Limited as an instrument to carry out a deliberate and willful scheme to infringe on the copyright, trademark, and trade dress rights of DeYoung and others, was the dominant influence in Defendant Printabel and determined the policies that resulted in the infringement complained of, and aided and abetted the infringement of the other named Defendants.

181.     Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

182.     Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

183.     Defendants have profited from this consumer confusion by diverting consumers from DeYoung to Defendants.

184.     As a result, DeYoung has suffered monetary damages and a loss of goodwill associated with his DEYOUNG mark.

185.     Consequently, Defendants' use of the DEYOUNG mark constitutes false designation of origin pursuant to 15 U.S.C. § 1125(a).

186.     DeYoung is entitled to the recovery of Defendants' profits, DeYoung's actual damages, and the costs of this action.

187.     DeYoung is also entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

188.     DeYoung is also entitled to his attorneys' fees consistent with 15 U.S.C. § 1117 because this is an exceptional case.

### COUNT VII—MISAPPROPRIATION OF NAME OR LIKENESS

189.     DeYoung incorporates all foregoing paragraphs as if fully restated herein.

190.     DeYoung has an interest in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others.

191.     Specifically, DeYoung uses his name in the commercial sale of fine art and other goods.

192.     Defendants have used DeYoung's name in commerce in association with the sale and offering for sale of bedding, rugs, and clothing goods by applying his name directly to these goods.

193.     Defendants' use of DeYoung's name is commercial in nature.

194.     Defendants' use of DeYoung's name is likely to cause confusion, to cause mistake, and to deceive the public by suggesting that Defendants' goods are authorized by, sponsored by, approved by, or affiliated with DeYoung's goods.

195.     Defendant Dong directly authorized, directed, and participated in Printabel's infringing activity.

196.     Specifically, Dong personally participated in the actual infringement of Defendant Printabel, derived financial benefit from the infringing activities of Defendant Printabel, used Printabel Company Limited as an instrument to carry out a deliberate and willful scheme to infringe on the rights of DeYoung and others, was the dominant influence in Defendant Printabel and determined the policies that resulted in the misappropriation complained of, and aided and abetted the infringement of the other named Defendants.

197.     Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have personally participated in the actual infringement of Defendant Printabel by acting in concert with Defendants Printabel and Dong to operate websites that advertise, display, and sell images and goods that infringe upon Plaintiff DeYoung's rights at the direction of and under the control of Defendant Printabel and by deriving a financial benefit from these infringing activities.

198.     Specifically, Defendants Nguyen, Daughtery, Clow, Trung, and Bruen have provided Defendants Printabel and Dong with operational support and aliases that have allowed Defendant Printabel and Dong to continue and conceal their infringing activities.

199.     Defendants' use of DeYoung's name in commerce is likely to confuse the public.

200.     Defendants have profited from this consumer confusion by diverting consumers from DeYoung to Defendants.

201.     As a result, DeYoung has suffered monetary damages and a loss of goodwill associated with his DeYoung name.

202.     Consequently, Defendants' use of DeYoung's name constitutes misappropriation of name or likeness under Michigan common law.

203.     DeYoung is entitled to the recovery of Defendants' profits, DeYoung's actual damages, and injunctive relief.

### PRAYER FOR RELIEF

DeYoung respectfully requests that the Court enter the following judgment against Defendants:

1. That the Court preliminarily and permanently enjoin and restrain Defendants, as well as their heirs, successors, assigns, officers, agents, and employees from:

   a. From reproducing, preparing derivative works of, distributing copies of, and displaying publicly Plaintiff DeYoung's Trout Confetti 1, Tarpon Flank—Late, and Dream Double 1 works;

   b. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiff DeYoung's Trout Confetti 1 and Tarpon Flank—Late trade dress or any confusingly similar trade dress;

   c. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiff DeYoung's DEYOUNG trademark or any confusingly similar trademark;

   d. Aiding or assisting any other third party in subsections (a) and (b) above;

2. That the Court award DeYoung, at his election, his actual damages, lost profits, consequential damages, exemplary damages, statutory damages, and any other damages allowable under law;

3.  That the Court award DeYoung costs and attorneys' fees, and;

4.  That the Court award DeYoung any other relief to which he is entitled.

Respectfully submitted,

Date: February 28, 2020                    Derek DeYoung

                                           /s/ John Di Giacomo
                                           John Di Giacomo
                                           Eric Misterovich
                                           Amanda Osorio
                                           *Attorneys for Plaintiff*
                                           Revision Legal, PLLC
                                           444 Cass St., Suite D
                                           Traverse City, MI 49684
                                           Phone: (231) 714-0100
                                           Fax: (231) 714-0200
                                           john@revisionlegal.com
                                           eric@revisionlegal.com
                                           amanda@revisionlegal.com

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all eligible counts contained within this

Second Amended Complaint.

Respectfully submitted,

Date: February 28, 2020                    Derek DeYoung

                                           /s/ John Di Giacomo
                                           John Di Giacomo
                                           Eric Misterovich
                                           Amanda Osorio
                                           *Attorneys for Plaintiff*
                                           Revision Legal, PLLC
                                           444 Cass St., Suite D

Traverse City, MI 49684
Phone: (231) 714-0100
Fax: (231) 714-0200
john@revisionlegal.com
eric@revisionlegal.com
amanda@revisionlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2020, I electronically filed the foregoing Second Amended Complaint by using the ECF system, which has given notice to all counsel of record.

Date: February 28, 2020

<u>/s/ John Di Giacomo</u>
John Di Giacomo
Eric Misterovich
Amanda Osorio
*Attorneys for Plaintiff*
Revision Legal, PLLC
444 Cass St., Suite D
Traverse City, MI 49684
Phone: (231) 714-0100
Fax: (231) 714-0200
john@revisionlegal.com
eric@revisionlegal.com
amanda@revisionlegal.com